I'm Michael Rafel on behalf of the United States. Judge Rollins and I would like to reserve one minute for rebuttal. I. Thank you. Your Honor, in this case the departure that the court granted was both legally in error and factually inapplicable. It was legally wrong because the district court in its written statement of the departure basis relied on the historical role of the defendant in providing care for his mother rather than looking forward as to whether the defendant was irreplaceable in providing care, which is the standard this Court applied in the Leon case. This written statement of departure by the district court echoed what the Court said at the hearing, where it specifically noted that there were other family members who were people who could provide care for the defendant's mother. So this legal analysis was not focused in the correct way. J. What made you think that it was entirely retrospective? It seems to me that the district court talked about the emotional needs of the mother as well as the physical needs. That wasn't entirely backward looking, was it? I. It probably was not entirely backward looking, but what the Court seemed to hinge, what the Court's analysis seemed to turn on and what it put in its written statement was the historical role of the defendant. What the Court stated at the hearing included when you have a preexisting relationship, i.e., a historical relationship, plus what the Court referred to as a particular injury, which I think is forward looking in the sense the Court was saying that without the defendant, something bad would happen to the family. It would be difficult for the family. And I have no dispute with that, that it would be difficult for the family, like it is with many defendants when they're in prison. So I acknowledge there is a bit of forward looking in there, but this type of analysis where the district court was looking at particular injury, i.e., would there be inconvenience or difficulties or things harder on the family, is not the sort of forward looking analysis that this Court has demanded, because the statutes and the sentencing guidelines say that family circumstances are not usually to be considered, only when they are extraordinary. Had this defendant been the historical caregiver for his mother? Very recently he had, during the time that he was pending trial between the two. Only after he got in trouble? More or less. That was when he was the sole caregiver. He committed this offense in February 2003. He had been a transporter of drugs apparently three times. Beginning in March 2003, a month or that while he was on pretrial release, is when he became the sole caregiver, according to his family. I'm sorry, the primary caregiver. And this was because his sister, who was the primary caregiver before that, had a difficult pregnancy. And this apparently made it difficult for her to be the primary caregiver. So between March... She had lived in with the mother, hadn't she? Yes. She had lived in with the mother for the year before his sentencing. And accommodations were made at sentencing so the defendant did not have to surrender until December 2003, which was after the sister gave birth. And the pregnancy that would make it difficult for her to be the caregiver was, that circumstance was no longer. Of course, her duties as a new mother would might make it difficult as well. That is true. And obviously, raising a young child along with being a caregiver is difficult. Now what the care that the mother needed included insulin injections twice a day and meals cooked for her. Those sorts of things perhaps can be done by the sister, but also perhaps with some help hired by the family defendant. And what's very striking about this case, I think, is this defendant has three siblings nearby, all 40-ish, and not just the sister who was the sole caregiver for a time, but also two brothers who are lawyers, one a business litigator partner, the other a supervising deputy attorney general in Hawaii. This type of family support is unusual for cases. If anything, it counsels heavily towards there not being a departure compared to defendants who are the sole parents of children, the sole persons who can care for. Is this ruling of irreplaceability part of what we review in De Novo now? Yes, it is, Your Honor. I think under the PROTECT Act, because you reviewed De Novo, the application of the law to the facts, that this clearly Well, application of the law to the facts. How about the facts themselves? You do not review factual findings, De Novo, but the facts here, at least the relevant facts, are not in dispute. But we can see, for example, that the mother needs some care. Well, is irreplaceability an ultimate finding of fact, or is it? I think, Your Honor, it has to be. There is some effort in Defendant's Brief to say that sort of the mother's dependency on the defendant is somehow a finding of fact. But that has to be a conclusion of law as to what facts there are that make a defendant irreplaceable, and thus what circumstances are extraordinary. Counsel, did the district court make a finding that the defendant was irreplaceable in the mother's life? No. First of all, no. The court did not use those words, first of all. The court relied on the historical role, plus orally also stating sort of vaguely a particular injury. So the court did find, in our view, that there would be some harm to the family. Things would be difficult. In your view, is a finding of irreplaceability required? Yes. It's required under Leon. And this Court sort of – Leon was sort of a survey of the law by this Court that found that departures in this area were permissible when the defendant was irreplaceable, but not permissible where the defendant was not. That distinguished the case in Leon from cases – earlier cases by this Court in Miller and Berlier, where the court had said that sort of ordinary inconveniences – some quite great, I think, but inconveniences such as children who will be left without a custodial parent were not themselves enough to be extraordinary family circumstances. Here the defendant has unique circumstances, like many families do. Every family has unique circumstances. But the question as to whether they're extraordinary or not depends on whether the defendant is irreplaceable. There's an Eighth Circuit opinion by Judge Hanson that the defendant relies on in Haversad, and that's a case where the circumstances are found to be extraordinary because there's a psychiatrist who testifies – or it may not be testified – it may be in the pre-sentence report, but the psychiatrist has provided information that the family member who needs care has psychological problems that are life-threatening. And, in fact, using the very word irreplaceable, the doctor said that the defendant was irreplaceable in that case. He said that there – he had grave clinical concerns that if the defendant were incarcerated for a long period of time, that there would be harm to the person that needed care. Here we don't have that sort of testimony. We have the normal types of emotional loss that the mother will feel having her son in prison. And the total prison time for a Federal drug case pre-departure here was 30 months, which is half of what the mandatory minimum would have been. The defendant faced a 60-month mandatory minimum, but – And the minimum that you would agree to is what, 30? It's 30, Your Honor. And with good time, obviously, the defendant could be out in 27 months. And the defendant got 18 months. Yes. And the defendant had – the mandatory minimum he was subject to was 60 months. He – I understand that he had a safety valve departure down. Safety valve plus minor role plus the safety valve reduction plus acceptance of responsibility got him down very substantially, at least for a Federal drug case, to 30 months. The government agreed to the role reduction in the face of the PSI that denied it, right? We did, Your Honor. It was agreed to in the plea agreement. So the defendant got substantial reductions to – I mean, I think it is relevant that the total was two and a half years, because that is the sort of circumstance with siblings who are lawyers. It says in the PSR, paragraph 81, that the defendant lived in a house owned by his younger brother, the supervising district attorney, with his mother, with a family who has – apparently has some sort of resources that there are ways to make due for a reasonable period of time.  Yes, I do, Your Honor. Thank you very much. May it please the Court, I'm James Laughlin. I represent the appellee, Matthew Young. Before turning to the facts of this case, I'd like to spend a little bit of time talking about the appropriate standard of review. After the PROTECT Act, this Court reviews downward departures de novo. But significantly, it still continues to review the district court's factual findings underlying a departure that was granted for clear error. The government says that this is not an issue, the standard of review is not an issue, because this case isn't about factual disputes. But I think it's hard to miss the fact that when you read the briefs, that this is all about factual disputes. And the main factual dispute is, was Mr. Young the Counsel, isn't that a mixed question of law and fact? I don't think so, Your Honor. And saying that, I understand that this is a new area for the Court, as well as the Bar, as to how the Court's going to address these kinds of departure appeals. Traditionally, I think it was always considered in the district court a question of fact. Do the facts justify the downward departure for an essential or irreplaceable caretaker? And viewed in light, I think that it is purely a question of fact. Counsel, there's no question of fact regarding the medical condition of the mother or who actually provided the care at certain periods of time, isn't that true? That's true to a point, although I would like to take this opportunity to address a little bit more with sentencing. And the record is clear about that. The letter that Alice Young submitted to the Court said, Matthew is and always has been my primary caregiver. Her doctor also wrote a letter that said, quote, Matthew has served as her caregiver diligently these past years and continues to do so. So he's been doing this for a long time. In fact, he was even before... What the evidence in the record says is that the sister was, for a period of time, assisting in the giving care to the mother because of her pregnancy, she had to stop working for a time period. She was living in the home with the mother and Mr. Young. What portion of the record are you relying upon to support your position that the sister was merely an assistant? If you give me a minute, I will... Paragraph 57 of the pre-sentence report. His sister sometimes resides in their mother's home and other times resides in her own residence, which is 20 minutes away. Her self-employment, to which she intends to return full-time following the birth of her child, allows some schedule of flexibility. But where does that say the sister was merely an assistant? Well, I think that that imbued in context with the statements by both Alice and her doctor saying Matthew was a primary caregiver shows that while during the period of time she was in the home, she was helping out with these duties, she was not the primary caregiver. What did the district court say about that factual question? Well, what the district court determined was particularly within the court in question of government talked about the question of how the court looked into the future. What the district court did is it said that this is a woman who's going to give birth soon. She's going to be returning to work full time soon. And her and her husband are planning to move out into their own home. This is not a woman who this is a woman who I believe the court said used the word this. This is a woman. Young woman is going to be occupied rather fully for a period of time. And therefore, the district court recognized that she can't take on the role that the government suggests. And I think that wasn't where my question was directed. My question was record was directed to what did the district court say about who had been the primary caregiver? The district court had, as the government points out, said that Mr. Young had the historical role of providing the care to his mother. She also did note that there are family members assisting. And I think it's significant that she noted that, not for the reasons that the government says, but because it shows that she was aware of the siblings and the limits to which they could assist. Would you look at paragraph 72 of the PSR? Third sentence. Talking about the sister, as a result, she is no longer able to care for her mother as she had done previously, and Young has become the primary caretaker for their mother since March 2003. Is that consistent with your argument? I think it is. I mean, I think that that could have been articulated by the probation officer in a better way. But I think that if you also look at paragraphs 53 and 60, you'll see that Mr. Young had actually moved into the family home in December of 2001. And at that time, his mother was sick, but also his father had Alzheimer's and was dying. He ultimately died in October of 2002. And those show that he was his father's primary caregiver. And I think that you put this together with the letters that were submitted by the I have to take issue with you again. Look at paragraph 59, the last sentence. Talking about the care of the father, it says during that time, the father was being cared for by Young's sister and mother, although Young would also assist him in his care. Your Honor, again, I don't think that's inconsistent with what I'm saying, although I do acknowledge that the  as fully as defense counsel tried to do in the letters that he submitted to the court. You were relying upon the PSR to support your argument that there was a finding that Mr. Young was a primary caregiver. In part, Your Honor. And I think that, like I said, because the findings by the probation officer are not inconsistent. And irrespective of what the probation officer determined, I don't think that there's any question that Judge Schneider was a primary caregiver. And I think that's all that's relevant to the court here, because the court doesn't defer to the probation officer. The court doesn't review for clear error the statements made by the probation officer. It reviews Judge Schneider's factual finding for clear error. And here. Pardon me. Complete your answer. I'm done. Your Honor. Were any of the paragraphs that the presiding judge referred to objected to by the defendant in the PSR? I don't remember during the – that she referred to – oh, I'm sorry. I'm sorry, I thought you were talking about Judge Schneider. I don't believe that they were, Your Honor. So we can take them as fact. I wouldn't go that far. Again, I don't think that it hurts to take them as fact, because I think what it does is it presents like an incomplete picture, which is then flushed out by the materials that were submitted by the family members themselves. And I think that clearly the record viewed as a whole, the pre-sentence report with these letters that were submitted by the CASA – I'm sorry, the young family members, provides the necessary factual basis for the factual findings that the district court did make. And therefore, I don't think the court can find that any of those factual findings are clearly erroneous. Counsel, what's your response to opposing counsel's position that there must be a finding that the caregiver is irreplaceable? I agree that that's the standard under Leon. And I also think that the court made it here. As I point out in the briefs, and I think this is one of the most significant issues the court may have to address in this case, because I don't think there's a lot of case law on it yet. And that is the deference the court owes to a district court's implicit factual findings as well as its expressed factual findings. And here, because the government in the court below told the district court, you have to find that this person's an irreplaceable caretaker or you can't give him a departure for extraordinary family circumstances. When the district court then gave a departure for extraordinary family circumstances, it implicitly found that he was an irreplaceable caretaker. And I think that is a factual finding that this court can only review for clear error. Do you agree there's no explicit finding of that effect? No, although I think it's kind of subsumed within the court's. No, there isn't an explicit or no, you don't agree with me? No, I don't believe there isn't. She never said, I find he is an essential caretaker. I think that when she said he had a historical role, it begs the question, what is his historical role? And given the circumstances, the standard presented by the government and the circumstances in the sentencing hearing, clearly that historical role was as the irreplaceable caretaker. Well, were there findings by the district court that no one else in the family really could do this and that there weren't the resources to hire somebody to do it? I believe so. I believe that when the court, definitely so, Your Honor. When the court said that it recognized that there are other family members who are assisting, it implicitly acknowledged the limitations on their ability to assist. But the court didn't make a finding whether or not the other, the siblings would be able to step in and fulfill the role that had previously been filled by Mr. Young, did it? Again, it did not expressly make the finding, but it's important to note that each one of the arguments that the government makes here, it made in the district court, and the judge nevertheless granted a downward departure. So implicitly it rejected the claim the other family members can step in or that part time. How many implicit findings under your theory do we have to find here? Not many, Your Honor. I believe that the key one, and I think that it's clear, is that he was an irreplaceable caretaker. And I think one of the findings that underlines that finding is that his siblings were not available to provide the necessary support for the mother. That's an implicit finding, right? That you say the district court made? The unavailability of the siblings? Yes. Or is there an explicit finding of that? No. Okay. So that's two. Okay. Well, Your Honor, if, as I point out in the briefs, if the problem the court has is that the court did not make its intentions clear enough, that can be remedied by remanding the case to the district court and saying, you know, we just can't figure out what you were doing here. We want here's the standard. Make the factual findings that are necessary to determine either that the departure is appropriate or it isn't appropriate. I don't see the government says in a footnote that he thinks that that might be improper. I don't see anything improper about that. This court shouldn't, if the question is whether the court made the requisite factual findings, the remedy for that is to send it back to the district court for clarification. I don't think you can, Your Honor. I think it's significant that the government never presented any evidence during the sentencing. It never asked to cross-examine the young family members. It never presented any other. Whose burden to show the dowry departure is merited, is it? It was your client's burden, right? It is. It is our client's burden. It is our client's burden, and I think we met that burden. I'll point out that Christopher Young said in a letter, our brother, Matt, is the only person willing and able to care for our mother 24-7. This brother is a lawyer? Yes. And he's the assistant attorney general? Supervising deputy attorney general. And how far away does he live from mother? An hour's drive away, just like the other brother. And he's unable to assist? Not, I mean, the logistics are obvious, Your Honor. This is a woman who, and this is truly undisputed, this is a woman who requires intensive, round-the-clock care. She cannot. Where is it in the record, counsel, that she requires intensive, round-the-clock care? Well, I can point out in the briefs where we made that point. In the briefs. Where is it in the record that the mother requires intensive, round-the-clock care? If you'll give me a minute, Your Honor. Thank you. Your Honor, I can point you to the portions of the record that describe her medical problems, point out that she has. But that's a different question. The question, intensive, round-the-clock care is a different issue than having medical problems. Well, but her medical problems are such that she's 250 pounds, she's had two knee replacement surgeries. But you made a very emphatic statement, which is not supported by the record. Round-the-clock care is a different issue than having medical problems. I think that, I mean, the brother himself recognized that, this is Christopher, saying he's the only person available to give my mother 24-7 care. But that's self-serving, isn't it? I mean, he's an hour away. He may not want to do it. And you know what? If he doesn't want to do it, then that's a significant fact. Because the government's argument on appeal is that, oh, these family members can step in. They can make the sacrifices, financial and otherwise, to do this. The sad fact is it would be nice if every parent could depend on children like that. But that's not the fact. We don't know that because the record doesn't say whether or not they were willing to do it. We don't have any record on that, do we? Well, we certainly have Christopher's statement that he was unwilling to do it. And we have the statement of his wife that says that they were unwilling. Not unwilling, that it would be difficult. Counsel, you have a seat at your time in any event. So thank you very much for your time. Your Honors, I think the thoroughest reading of the pre-sentence report from Paragraphs 59 and 72 is that prior to this offense, really the primary caretaker for the mother was the sister. And it's when her pregnancy complications happened and after this offense that the defendant took over. If it were true that the defendant was somehow the primary caretaker before, he would have to explain how he had time to make three trips as a drug courier, in this case, during the time that he was supposedly the sole or primary caretaker for his mother. Additionally, I would note that the defendant, according to Paragraph 72, did live with his mother from December 2001 on, apparently supported by the resources of his mother or his family. It seems like there are resources in order to, if there were resources to support him, there are resources to somehow support someone else. Does the record tell us that during the time he was living with his mother, his sister was also living with his mother? The record says beginning in October 2002, the sister was living with his mother. Does the record say whether or not Matthew ever moved out? It simply says at Paragraph 72 that Matthew lived there from December 2001 on. The record does say that during 2002, the mother and the sister were the primary caretakers for their father while he was living. So the mother, just a year before the events here, was in the position of being able to help care for her now-deceased husband. And it did say the defendant was helping out with that care, but the question here is whether he's irreplaceable as a caretaker. This is a situation where there were a lot of family resources, and at least the defendant did not discharge his burden of showing otherwise. Counsel, you say on page 70 of your brief, quote, there was no dispute that young 69-year-old mother suffers from a host of physical infirmities and requires a full-time live-in caretaker. Do you still adhere to that? I don't think that a full-time live-in caretaker is necessary. The brief says it is. There's no dispute that she requires a full-time live-in caretaker. Now, what do we do with that? I'm sorry, I'm trying to find that. It's about five lines up from the bottom of page seven, about six or seven lines up of your brief. I have on page seven, in the months prior to sentencing, defendant was the mother's primary caregiver, cooking her meals, helping her bathe, and taking her to the doctor. Well, in the summary of argument, your red brief, page seven, the third sentence in the summary of argument. I'm sorry. Well, in any event, Your Honor, I don't, oddly enough, I don't even have a summary of argument section of my brief. Oh, I'm sorry. I'm sorry. All right. Okay. I disagree with that. It's so rare to have the government appealing until this new policy on appealing every, nearly every downward departure. The whole reversal has its disadvantages. I didn't want to deny saying it. So it's not in your brief. No wonder you couldn't find it. Okay. Okay. And we are not appealing every departure, Your Honor. But in this case where the defendant got substantial reductions from the otherwise applicable mandatory minimum, where the departure was substantial, both in relative terms and, you know, was four levels, and we think clearly this Now, wait a minute. You gave away the mandatory minimum when you gave safety valve, didn't you? Yes. However, I think that is a factor that, and I'm speaking sort of to our discretion as to when we would depart or when the situation is so much different than that of which other defendants get. I think it is a factor to look at overall in the justice of a case as to what the starting point was. Compared to many other Federal drug defendants, this defendant was already far lower in the sentencing range that applied before the departure. Counsel, before you conclude, would you please address opposing counsel's argument that we should remand this case for factual findings by the district court? Yes, Your Honor. It appears the PROTECT Act, and the PROTECT Act says that on remand the district court can only apply a departure that's been specifically approved by the court and was stated in the written statement of reasons that the court issued in the first instance. That would seem to indicate that the PROTECT Act does not allow the sort of up-and-down type of the factual findings are not enough. Let's send it back to firm up the departure. So following the PROTECT Act, but also following just the policy reason that perhaps defendants should be required to prove their departures in the first instance. Where the record hasn't been clear to support an upward departure, what's been this circuit's position? Does it remand for the government to make a better record below? Well, Your Honor, first of all, I don't think that post-PROTECT Act there are any of the score. There are a lot, upward departures are a lot less frequent, at least in our district and I think in this circuit. However, I think the same standards would apply, and we would be held to the same sort of standard that we have to prove our departure in the first instance. And if the facts are not there proven by us, just as if the facts are not there proven by defendant, and moreover, if the district court does not apply the correct legal standard, that is it, and the departure was improper. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for a case well-briefed and well-argued. The case just argued is submitted for decision by the court. The second case on calendar, Venn v. Ashcroft, has been removed. The next case on calendar for argument is Johnson v. Blanks. Mr. Amendola, you may approach. Thank you, Your Honor.
judges: Canby, Hansen, Rawlinson